# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **Preston Hollow Community Capital, Inc.,** | § § § § | |
| *Plaintiff,* | § | **CIVIL ACTION NO. 5:24-cv-00476** |
| v. | § § | |
| **Robert E. Esrey and R. Lee Harris,** | § § § | |
| *Defendants.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Preston Hollow Community Capital, Inc., as Successor Bond Owner Representative, files this Original Complaint against Defendants Robert E. Esrey and R. Lee Harris, and alleges as follows:

### I. INTRODUCTION

1. In this lawsuit, Plaintiff seeks enforcement of the Completion Guaranty executed by Defendants Esrey and Harris (collectively, the "**Defendants**" or "**Guarantors**") and dated effective as of March 30, 2022. That Completion Guaranty requires Defendants to make payments to offset cost overruns and delays incurred in the construction of a workforce residential housing development located in San Antonio, Texas. Defendants have made such payments in response to four prior demands in

connection with cost overruns and delays, but have now wrongfully refused to make further required payments.

2. Plaintiffs now seek redress from this Court to enforce the Defendants' obligations and duties under the Completion Guaranty and recover the costs and expenses incurred in enforcing the Completion Guaranty.

## II.  PARTIES

3. Plaintiff Preston Hollow Community Capital, Inc. ("**PHCC**") is a Delaware corporation with its principal offices in Dallas, Texas. PHCC brings this lawsuit in its capacity as Successor Bond Owner Representative.

4. Defendant R. Lee Harris is a natural person and citizen of the State of Kansas. Defendant Harris may be served at 8500 Shawnee Mission Pkwy, Suite 150 Merriam, KS 66202 or wherever he may be found.

5. Defendant Robert E. Esrey is a natural person and citizen of the State of Kansas. Defendant Esrey may be served at 8500 Shawnee Mission Pkwy, Suite 150 Merriam, KS 66202 or wherever he may be found.

## III.  JURISDICTION AND VENUE

6. This Court has subject-matter jurisdiction because complete diversity exists between the parties and the amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Defendants Esrey and Harris because Defendants consented the exclusive jurisdiction of the state or federal courts

having jurisdiction in Bexar County, Texas through Section 19(c) of the Completion Guaranty.

8. This Court additionally has personal jurisdiction over Defendants because this civil action arises from their acts and omissions related to the East Commerce Project, which is in Texas.

9. Venue is proper in this district and division because a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred here, and because the East Commerce Project at issue is in this district and division.

### IV. FACTUAL AND PROCEDURAL BACKGROUND

**A. The East Commerce Project in San Antonio.**

10. This case concerns a construction Completion Guaranty executed by the Defendants' to induce a bond sale and purchase transaction that financed the acquisition, development, construction, and operation of a workforce residential housing project located at 3815 East Commerce Street, San Antonio, TX 78219 (the "**East Commerce Project**").

11. The East Commerce Project is designed to offer 301-units of multifamily residential rental housing owned by a municipal corporation of the City of San Antonio on or before the original anticipated completion date of January 31, 2024. Because of environmental remediation demands and construction missteps, the project completion

date is currently more than 640 days delayed, and the project is more than $9,000,000.00 over budget.

12. The owner of the East Commerce Project is SAHT Creekview Lofts, LLC (the "**Owner**"), a Texas municipal corporation of the City of San Antonio formed for the exclusive purpose of owning and operating the East Commerce Project. The San Antonio Housing Trust Public Facility Corporation is a nonprofit municipal corporation authorized to finance the acquisition, construction, rehabilitation, equipping, furnishing and placement in service of public facilities of the City (the "**Bond Issuer**").

13. Cohen-Esrey Development Group, LLC (the "**Developer**") executed the Development Agreement with the Owner and Bond Issuer dated March 30, 2022. Under that Agreement, Developer is obligated to achieve the permitting, design, construction and equipping of the East Commerce Project by the completion date of January 31, 2024 and within the guaranteed maximum price of $39,200,00 for construction costs.

14. A series of inter-related agreements and security documents executed in March of 2022 set out the obligations, rights, and liabilities of all parties in the East Commerce Project. Because this lawsuit turns solely on Defendants' liability for cost overruns and delays under the Completion Guaranty, this Original Complaint does not fully describe all the agreements related to East Commerce Project, but those other agreements are referenced in the Completion Guaranty and are well known to Defendants.

15. PHCC LLC (an affiliate of Plaintiff) provided substantially all the capital required to fund the project by purchasing approximately $58,228,668.47 of tax-exempt bonds issued by the Bond Issuer as governed by an Indenture of Trust dated March 1, 2022, executed between U.S. Bank Trust Company as Trustee and the Bond Issuer.

16. Under the Indenture of Trust, the Completion Guaranty, and other transaction documents, PHCC LLC is identified as the initial Bond Owner Representative. The Bond Owner Representative has substantial rights and remedies under the Indenture, Loan Documents, and Completion Guaranty, and acts on behalf all bond holders in carrying out or enforcing agreements.

17. Specifically, Section 19(o) of the Completion Guaranty provides that "in connection with the Bond Owner Representative's acceptance of this Guaranty and exercise of its rights hereunder, the Bond Owner Representative shall be entitled to all of its rights, privileges, benefits, protections, and immunities set forth in the Bond Indenture and other Loan Documents."

18. By letter dated May 8, 2022, PHCC LLC resigned as Bond Owner Representative with the waiver of any notice requirements by the Trustee, the Issuer, and the Owner. Pursuant to Article 9 of the Indenture of Trust, Plaintiff Preston Hollow Community Capital, Inc. was appointed as the successor Bond Owner Representative under the Indenture, the Completion Guaranty, and all agreements related to the East Commerce Project.

19. Under the terms of the March 30, 2022 Loan Agreement between the Bond Issuer and Owner, proceeds from the issuance and sale of the bonds were loaned to the Owner to be utilized for construction of the East Commerce Project. The Bond Issuer and Owner simultaneously entered contracts with the East Commerce Project's Developer, Contractor, Architect, and Construction Monitor to carry out the project.

20. At the closing of the transaction, $47,925,428 of the proceeds were placed into the Project Fund, which would be disbursed by the Trustee to pay project costs received through Disbursement Requests from the Developer. The development cost of approximately $47,925,428 includes $39,200,000 in guaranteed maximum construction hard costs, $1,855,000 in land acquisition, and $6,870,000 in various soft costs.

### B. The Completion Guaranty and Loan Rebalancing Payments.

21. The Completion Guaranty was made for the benefit of Trustee, the Bond Owners, and the Bond Owner Representative under the Indenture of Trust, and it benefits the Trust managing the loaned bond proceeds. A true and correct copy of the Completion Guaranty is attached hereto as Exhibit A to this Original Complaint and is fully incorporated as though fully restated herein.

22. Defendants Esrey and Harris are principals of the East Commerce Project's Developer. To induce the purchase of the bonds, and as a necessary condition to same, Defendants executed a Completion Guaranty in favor of the Trustee and Bond Owner Representative. Among other things, the Completion Guaranty obligates Guarantors to

make "Loan Rebalancing Payments" in increments of $1,000,000 for cost overruns beyond the guaranteed maximum construction price of $39,200,000 and/or the increased carrying costs from delays of the substantial completion schedule.

23. At the time of the transaction closing in March 2022, the parties were aware of existing uncertainties and risks related to environmental delays and construction completion costs. To address those realities, the parties – with Guarantor's explicit agreement – drafted the Completion Guaranty to specifically require increased financial commitments by Defendants in response to costs of delay and increased construction costs associated with the project. Accordingly, Defendants executed the Completion Guaranty to ensure timely payment of cost overruns and delay costs such that those costs would not fall to the Bond Owners or deplete Trust assets in the event that the Developer defaulted on its obligations.

24. The Completion Guaranty, *inter alia*, required Defendants to inject additional funds into the trust for increased interest payments resulting from delays extending the project deadline and for increased costs of construction.

25. Specifically, under Section 3(5)(i) and (ii) of the Completion Guaranty, Defendants are obligated to pay "any and all cost overruns above the total of the Guaranteed Maximum Price as of the Closing Date of $39,200,000, plus $1,763,661; and increased costs of the guaranteed work, including carrying costs of constructing or completing the [East Commerce] Project".

26. "[I]n the event costs of the Guaranteed Work increase by more than $1,000,000… Guarantor[s] will make loan rebalancing payments in increments of $1,000,000 (each a 'Loan Rebalancing Payment')". Loan Rebalancing Payments are to be "paid when due" without reservation.

27. Section 3(b) stipulates that Defendants are "unconditionally and irrevocably" obligated to pay "any and all costs, expenses, losses…including the reasonable fees of outside legal counsel…incurred by Bond Trustee and Bond Owner representative in enforcing their rights under" the Completion Guaranty.

28. Further, the Defendants are jointly and severally liable for the obligations in the Completion Guaranty under Section 13.

C. **Project Delays and Demands For Loan Rebalancing Payments.**

29. In August 2022, environmental remediation requirements at the project site slowed progress of construction. Developer notified the Bond Owner Representative (now "PHCC" as Successor Bond Owner Representative) that the Substantial Completion date of January 30, 2024 would not be met. After receiving an updated schedule and cost overruns from Developer, PHCC sent a demand to Defendants on January 24, 2023 for a $2,000,000 Loan Rebalancing Payment under Section 3(5)(i) and (ii) of the Completion Guaranty. (the "First Payment"). Defendants made the First Payment.

30. In spring of 2023, PHCC received an updated construction schedule that extended the Substantial Completion date to November 5, 2024, an aggregate 280-day

delay beyond the original completion date. PHCC received additional change orders and accounting of the cost of carry from the delay totaling approximately $3,468,269.04. After subtracting the First Payment, PHCC sent a demand to Defendants on May 5, 2023 for a $1,000,000 Loan Rebalancing Payment under Section 3(5)(i) and (ii) of the Completion Guaranty (the "Second Payment"). Defendants made the Second Payment.

31. In July 2023, PHCC received an updated construction schedule that extended the Substantial Completion date to June 5, 2025, an aggregate 492-day delay beyond the original completion date. PHCC received additional change orders and accounting of the cost of additional carry totaling approximately $2,058,380.08 accrued since the Second Payment. PHCC sent a demand to Defendants on August 15, 2023 for a $2,000,000 Loan Rebalancing Payment under Section 3(5)(i) and (ii) of the Completion Guaranty (the "Third Payment"). Defendants made the Third Payment.

32. In November 2023, PHCC received an updated construction schedule that extended the Substantial Completion date to September 10, 2025, an aggregate 589-day delay beyond the original completion date. PHCC received additional change orders and accounting of the increased cost of carry totaling approximately $2,042,228.38 accrued since the Third Payment, bringing the total of cost overruns to $7,282,444.70. PHCC sent a demand to Defendants on December 11, 2023 for a $2,000,000 Loan Rebalancing Payment under Section 3(5)(i) and (ii) of the Completion Guaranty (the "Fourth Payment"). Defendants made the Fourth Payment.

33. In February 2024, PHCC received an updated construction schedule that extended the Substantial Completion date to November 5, 2025, an aggregate 645-day delay beyond the original completion date. The delay equated to a total increased cost of carry delay of $6,262,524. Additional change orders brought the total of project cost increased to $3,814,049.95, for a combined $9,326,598.42 in cost overruns.

34. After reducing the cost overruns by the $7,000,000 in prior Loan Rebalancing Payments made by Defendants, PHCC sent a demand to Defendants on March 27, 2024 for a $2,000,000 Loan Rebalancing Payment under Section 3(5)(i) and (ii) of the Completion Guaranty (the "Fifth Payment"). A true and accurate copy of PHCC's March 27, 2024 Demand Letter is attached hereto as Exhibit B. Defendants balked.

35. Counsel for Defendants contacted PHCC, raising unfounded disputes regarding the calculation of the Fifth Loan Rebalancing Payment. After discussions with counsel representing the Defendants failed to make headway, PHCC sent its first notice of default and supplemental demand for the Fifth Payment on April 18, 2024, extending an additional twelve days for Defendants to remit the Fifth Payment. The April 30, 2024 extended deadline came and went without acknowledgment from Defendants.

36. On May 5, 2024, counsel for PHCC issued a second notice of default and supplemental demand for the Fifth Payment advising Defendants of this potential lawsuit and PHCC's intention to recover its attorney's fees and costs. A true and correct

copy of the May 5, 2024 Demand Letter is attached hereto as Exhibit C. As of the date of this Complaint, the Defendants have not responded to the Demand.

**D.     Conditions Precedent.**

37.     Plaintiff fully complied with all applicable conditions precedent.

### V.     CAUSES OF ACTION AND REMEDIES

#### COUNT ONE: DECLARATORY JUDGMENT

38.     All factual allegations set forth elsewhere in this Complaint are expressly incorporated by reference into Count One.

39.     Despite honoring the Completion Guaranty in response to four prior demands and remitting the First, Second, Third, and Fourth Loan Rebalancing Payments to the Trustee of the East Commerce Project, Defendants have refused to make the Fifth Payment demanded by PHCC as Bond Owner Representative on March 27, 2024, on April 18, 2024, and again on May 1, 2024. Accordingly, there remains an actual and justiciable controversy concerning the obligations and amounts owed by Defendants under the Completion Guaranty.

40.     Pursuant to the Uniform Declaratory Judgment Act, Sections 37.001, *et seq.*, of the Texas Civil Practice and Remedies Code and 28 U.S.C. Sections 2201 & 2202, PHCC seeks the following declarations:

    i.     Defendants in their capacity as Guarantors under the Completion Guaranty are obligated to pay any and all cost overruns above the total of the

      Guaranteed Maximum Price of the East Commerce Project as of the Closing Date of $39,200,000, plus $1,763,661; and

ii. Defendants in their capacity as Guarantors under the Completion Guaranty are obligated to pay the increased costs of the Guaranteed Work including carrying costs of construction delays and completing the Project, resulting from any cause, including differing or unforeseen site conditions, delays, required environmental remedial work, redesign activities, and change orders.

iii. As a result of delays beyond the contracted substantial completion date of January 30, 2024 and cost overruns, as of the filing of this Complaint, the Guarantors are liable under the Completion Guaranty in an amount of $9,326, 598.42, less the amount of any previously funded Loan Rebalancing Payment by Guarantors.

iv. The Fifth Payment of $2,000,000.00 first demanded by PHCC on March 27, 2024 is due and owing to the Trust for the East Commerce Project.

v. Defendants' performance of the Completion Guaranty is not conditional, subject to any set-off, recoupment, abatement, deferment, or defense based upon any claim that Defendants may have against Bond Owner Representative, Owner, Bond Issuer, and/or Trustee.

    vi.    Bond Owners and Bond Owner Representative have fully performed their duties and obligations, if any, under the Completion Guaranty.

    vii.    Defendants' future performance of the Completion Guaranty is not released, terminated, or discharged by Defendants' breach and/or default of the Completion Guaranty.

    viii.    Defendants' obligations and duties under the Completion Guaranty have not been released or discharged, are continuing, and remain in full force and effect.

### COUNT TWO: BREACH OF CONTRACT

41. All factual allegations set forth elsewhere in this Complaint are expressly incorporated by reference into Count Two.

42. Defendants entered into the Completion Guaranty which is a valid and enforceable contract under Texas Law. The Completion Guaranty states it is made expressly "for the benefit of" the Bond Owner Representative.

43. Plaintiff and the Bond Owners have fully performed on the contract; alternatively, performance by Plaintiff and Bond Owners is excused and/or inapplicable given that the nature of the contract at issue is a guaranty signed by Defendants for the benefit of Plaintiff and Bond Owners.

44. Defendants breached the Completion Guaranty, as stated above, including by: (i) failing to perform its continuing obligations under Section 10, and (ii) failing to

make payment of costs from delay and construction cost overruns when due in violation of Sections 3(5)(i) and (ii).

45. As a direct and proximate result of the Defendants breach and/or non-performance, PHCC as Successor Bond Owner Representative has suffered and continues to suffer damages. PHCC seeks specific performance of the Defendants' duties and obligations under the Completion Guaranty pursuant to which Defendants are required to inject at least $2,000,000 into the Trust as of the filing of this Complaint.

### COUNT THREE: ATTORNEYS' FEES AND COSTS

46. All factual allegations set forth elsewhere in this Complaint are expressly incorporated by reference into Count Three.

47. Pursuant to Sections 37.009 and 38.001 of the Texas Civil Practice and Remedies Code, Section 3(b) of the Completion Guaranty, the Provisions of the Indenture of Trust, Development Agreement, and the Loan Agreement, PHCC seeks an award of its reasonable and necessary attorneys' fees and costs from the Guarantors in connection with this Original Complaint and the enforcement of the Completion Guaranty.

## VI. PRAYER

Plaintiff prays that Defendants be cited to appear and answer in this lawsuit and that, after resolution on the merits, Plaintiff recovers judgment against Defendants for damages, pre-and post-judgment interest, attorneys' fees and expenses, punitive damages, court costs, and such other relief to which Plaintiff is entitled—including but not limited to specific performance of the March 30, 2022 Completion Guaranty.

DATE:  May 10, 2024                              Respectfully submitted,

/s/ *Eric W. Pinker*
Eric W. Pinker
  State Bar No. 16016550
  epinker@lynnllp.com
Hayden G. Hanson
  State Bar No. 24110598
  *Admission Pending*
  hhanson@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone:    214-981-3800
Facsimile:    214-981-3839

*ATTORNEYS FOR PLAINTIFF PRESTON HOLLOW COMMUNITY CAPITAL, INC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 10, 2024, a copy of this document was served on all parties and counsel of record through the Court's e-filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Eric Pinker*
Eric W. Pinker