*Preston Hollow Community Capital v. Harris, et al.*, Civil Action No. 5:24-cv-00476

# EXHIBIT A

## COMPLETION GUARANTY

This **COMPLETION GUARANTY** (this "**Guaranty**") is made as of March 30, 2022, by Robert E. Esrey and R. Lee Harris (collectively, the "**Guarantor**"), for the benefit of (i) U.S. Bank Trust Company, National Association, as trustee (together with its successors and assigns, the "**Bond Trustee**") under the Trust Indenture dated as of March 1, 2022 (the "**Bond Indenture**"), between SAHT Creekview Lofts, LLC (the "**Borrower**") and the Bond Trustee, and (ii) PHCC LLC d/b/a Preston Hollow Community Capital, a Delaware limited liability company, as the Bond Owner Representative under the Bond Indenture (the "**Bond Owner Representative**"). Capitalized terms used in this Guaranty but not otherwise defined herein shall have the respective meanings set forth in the Bond Indenture.

## <u>RECITALS:</u>

**WHEREAS**, pursuant to the Bond Indenture, the Issuer plans to issue its (i) $44,650,000.00 principal amount of San Antonio Housing Trust Public Facility Corporation Senior Bonds (Lofts at Creekview) Series 2022-A, and (ii) $15,349,837.92 principal amount of San Antonio Housing Trust Public Facility Corporation Subordinate Bonds (Lofts at Creekview) Series 2022-B (collectively the "**Series 2022 Bonds**"); and

**WHEREAS**, the holders of the Series 2022 Bonds are referred to herein collectively as the "**Holders**"; and

**WHEREAS**, the Issuer will lend the proceeds of the Series 2022 Bonds to Borrower, pursuant to a Loan Agreement dated as of March 30, 2022 (the "**Loan Agreement**"), between the Issuer (herein "**Lender**") and the Borrower, for the purposes described in the Loan Agreement (the Loan Agreement and all loan documents related thereto are the "**Loan Documents**" and the amount due under the Loan Documents is the "**Indebtedness**"); and

**WHEREAS**, proceeds of the Series 2022 Bonds will be used to fund a multi-family housing project located at 3626 and 3841 East Commerce Street in the City of San Antonio, Texas (the "**Project**"); and

**WHEREAS**, Borrower agreed to complete the Project and the associated design, permitting, installation, and construction thereof (the "**Guaranteed Work**"), subject to the terms and conditions of the Loan Documents; and

**WHEREAS**, the Borrower's obligations under the Loan Agreement are secured by the Mortgage (as defined in the Loan Agreement) encumbering the real property described in the Mortgage (the "**Property**"); and

**WHEREAS**, the Guarantor is executing this Guaranty to provide certain guarantees of the performance of all obligations described herein and on the terms and conditions set forth herein (collectively, the "**Guaranteed Obligations**") to induce the purchase of the Series 2022 Bonds by the Holders; and

**WHEREAS**, the Bond Owner Representative is purchasing all of the Series 2022 Bonds and will serve as the representative Holders under the related transaction documents; and

**WHEREAS**, an affiliate of the Guarantor serves as developer of the Project under a development agreement pursuant to which it will be paid a development fee in accordance with the terms and conditions thereof;

**WHEREAS**, the Guarantor acknowledges that it and its affiliates will directly benefit from the issuance of the Series 2022 Bonds.

**NOW, THEREFORE**, as an inducement to the Bond Trustee to enter into the Bond Indenture, the Issuer to enter into the Loan Agreement, and the Bond Owner Representative to purchase the Series 2022 Bonds, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, the Guarantor, intending to be legally bound hereby, represents and warrants to the Bond Trustee, the Issuer, and the Bond Owner Representative and covenants and agrees with the Bond Trustee, the Issuer, and the Bond Owner Representative as follows:

<u>AGREEMENTS:</u>

**1.     Recitals.**

The recitals set forth above are incorporated herein by reference as if fully set forth in the body of this Guaranty.

**2.     Defined Terms.**

Capitalized terms used and not specifically defined herein have the meanings given to such terms in the Bond Indenture.

**3.     Guaranteed Obligations.**

(a)     Guarantor hereby absolutely, unconditionally, and irrevocably guarantees to Lender, Bond Trustee, and Bond Owner Representative, and promises to pay and perform, the following:

(1)     That the Guaranteed Work will be constructed substantially in accordance with:

i.     The AIA Document A102-2017 Standard Form of Agreement Between Owner and Contractor where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price and the related AIA A201-2017 General Conditions of the Contract for Construction dated March 30, 2022, (collectively, the "Construction Contract"), between the Borrower and Galaxy/SAHTPFC JV#1 Joint Venture (the "General Contractor");

ii.     the plans and specifications listed in the Construction Contract as of the Closing Date and approved by the Bond Owner Representative;

iii.     the Construction Disbursement and Monitoring Agreement dated as March 30, 2022, among the Borrower, Developer, the Construction Monitor (as defined therein), the Bond Owner Representative, and the Bond Trustee; and

iv.     the Development Agreement dated as of March 30, 2022, by and between Developer and Borrower (the "Development Agreement").

(2)     that construction of the Guaranteed Work will commence on or before May 1, 2022 (the "**Commencement Date**"), and be completed and ready for occupancy, including the delivery

2

of any certificates of occupancy or other permits required by law, on or before January 30, 2024 (the "**Completion Date**");

(3)     Borrower will fully and punctually pay and discharge any and all costs, expenses, obligations, and liabilities for or in conjunction with the cost of completing the Guaranteed Work (including all permitting fees, licensing fees, amounts payable under construction contracts, subcontracts and supply contracts, and all amounts payable to architects, engineers and other design consultants), as the same become due and payable subject to Borrower's right to contest and bond over, or obtain title insurance over, the same to the satisfaction of Bond Trustee and Bond Owner Representative or as otherwise set forth in the Loan Documents;

(4)     the Property will be and remain free and clear of all liens other than i. Permitted Encumbrances, ii. liens which Borrower is diligently contesting in good faith that have been bonded off to the satisfaction of Bond Trustee and Bond Owner Representative, or iii. mechanics' or materialmen's liens which attach automatically under the laws of any Governmental Authority upon the commencement of any work upon, or delivery of any materials to, the Property and for which Borrower is not delinquent in the payment for any such work or materials; and

(5)     that all costs of the Guaranteed Work and construction of the Project, including, without limitation, the following costs, will be paid when due:

i.     any and all cost overruns above the total of the Guaranteed Maximum Price as of the Closing Date of $39,200,000, plus $1,763,661; and

ii.     increased costs of the Guaranteed Work, including carrying costs, of constructing or completing the Project, resulting from any cause, including without limitation, the following (unless caused by the action or inaction of Bond Trustee and or Bond Owner Representative): differing or unforeseen site conditions, delays, defects in design, material or workmanship, pandemics (unless ordered by a governmental authority to stop work because of a pandemic), defective equipment or materials, disruption, hazardous environmental conditions at the site, including required remedial work, monitoring and inspections, ingress and egress issues with regard to the Project, cost of design or redesign activities), supply chain disruptions, Force Majeure (as such term is defined in the Development Agreement), warranty claims, change orders, Insurance deductibles and/or amounts related to insurance losses that may not rise to the level of the deductible, and/or unreimbursed insurance claims. In the event costs of the Guaranteed Work increase by more than $1,000,000 as a result of foregoing, Guarantor will make loan rebalancing payments in increments of $1,000,000 (each, a "**Loan Rebalancing Payment**"). By way of example, if costs of the Guaranteed Work increase by $1,200,000, Guarantor would be required to make a Loan Rebalancing Payment in the amount of $1,000,000, and a second Loan Rebalancing Payment would not be required until the costs of the Guaranteed Work increased by $2,200,000 in the aggregate, at which time Guarantor would be required to make an additional Loan Rebalancing Payment. In the event there is a remaining delta between the original approved costs of the Guaranteed Work and the adjusted costs of the Guaranteed Work which has not been previously funded by Guarantor, Guarantor shall make a final Loan Rebalancing Payment which may be less than $1,000,000.

(b)     Guarantor hereby absolutely, unconditionally, and irrevocably guarantees to Bond Trustee and Bond Owner Representative the full and prompt payment of any and all costs, expenses, losses, liabilities, damages (including all foreseeable and unforeseeable consequential damages), demands, claims, actions, judgments, causes of action, assessments, and penalties incurred by Bond Trustee and Bond Owner Representative, including the reasonable fees of outside legal counsel, accountants, and expert witnesses incurred by Bond Trustee and Bond Owner Representative in enforcing their rights under this Guaranty.

(c)     Guarantor hereby promises to pay and perform, as and when due (whether by acceleration, at maturity, or otherwise) and at all times thereafter, each and all of the items and obligations which are stated to be guaranteed under this Section 3 (the "**Guaranteed Obligations**").  Guarantor is primarily liable for the Guaranteed Obligations.

**4.      Right to Complete.**

(a)     If Guarantor fails to perform the Guaranteed Work on or before the times such actions are to be performed by Borrower, Bond Trustee and Bond Owner Representative shall have the right, but not the obligation, to complete the Guaranteed Work (either before or after a Foreclosure Event), with such changes or modifications to the Plans that Bond Trustee and Bond Owner Representative deems necessary, and to expend such sums as Bond Trustee and Bond Owner Representative deem appropriate in order to so complete the Guaranteed Work.   Bond Trustee and Bond Owner Representative may utilize such employees, agents, contractors, subcontractors or other Persons to perform the Guaranteed Work as Bond Trustee and Bond Owner Representative may elect.

(b)     Guarantor hereby waives any right to contest any such changes or modifications to the Plans, or the amount of any such expenditures in furtherance of the completion of the Guaranteed Work.  The amount of any and all expenditures made by Bond Trustee and Bond Owner Representative to perform the Guaranteed Work or otherwise discharge the Guaranteed Obligations shall be immediately due and payable by Guarantor to Bond Trustee and Bond Owner Representative, regardless of whether the Guaranteed Work is completed.

**5.      Survival of Guaranteed Obligations; Termination of Guaranty.**

(a)     The obligations of Guarantor under this Guaranty shall survive any foreclosure event or other exercise of remedies under the Loan Documents or the Bond Indenture.

(b)     This Guaranty shall terminate and be of no further force and effect, without further act by Bond Trustee and Bond Owner Representative, upon the earlier to occur of (1) payment in full of the Indebtedness, or (2) completion of the Guaranteed Work and full satisfaction of the Guaranteed Obligations.  Any termination of the liability of Guarantor under this Guaranty shall not affect the liability (if any) of Guarantor under any other Loan Document.  This Guaranty shall continue to be effective or be reinstated (as the case may be) if at any time payment of all or any part of any sum payable pursuant to the Loan Documents is rescinded or otherwise required to be returned by Lender, Bond Trustee or Bond Owner Representative upon the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower, or upon or as a result of the appointment of a receiver, intervenor, custodian or conservator of, or trustee or similar officer for, Borrower or any substantial part of its property, or otherwise, all as though such payment to Lender, Bond Trustee, or Bond Owner Representative had not been made, regardless of whether Lender, Bond Trustee, or Bond Owner Representative contested the order requiring the return of such payment.

**6.      Guaranty of Payment; Community Property.**

Guarantor's obligations under this Guaranty constitute an absolute, present, unconditional, and continuing guaranty of payment, performance, and completion and not merely a guaranty of collection.  If Guarantor (or any Guarantor, if more than one) is a married person, and the state of residence of Guarantor or Guarantor's spouse is a community property jurisdiction, Guarantor (or each such married Guarantor, if more than one) agrees that Bond Trustee and Bond Owner Representative may satisfy Guarantor's obligations under this Guaranty to the extent of all Guarantor's separate property and Guarantor's interest in any community property.

**7.      Representations and Warranties.** The Guarantor represents and warrants to the Bond Trustee and the Bond Owner Representative as follows:

(a)      <u>Benefit</u>.  The Guarantor has received, or will receive, direct or indirect benefit from the making of this Guaranty with respect to the Guaranteed Obligations.

(b)      <u>Familiarity and Reliance</u>.  The Guarantor is familiar with, and has independently reviewed books and records regarding, the financial condition of the Borrower and is familiar with the value of any and all collateral intended to be created as security for the payment of the Series 2022 Bonds, the Loan Agreement or the Guaranteed Obligations; <u>however</u>, the Guarantor is not relying on such financial condition or the collateral as an inducement to enter into this Guaranty.

(c)      <u>No Representation by the Bond Trustee or the Bond Owner Representative</u>.  Neither the Bond Trustee, the Bond Owner Representative nor any other party has made any representation, warranty or statement to the Guarantor in order to induce the Guarantor to execute this Guaranty.

(d)      <u>Guarantor's Financial Condition</u>.  As of the date hereof, and after giving effect to this Guaranty and the contingent obligation evidenced hereby, the Guarantor is, solvent, and has assets which, fairly valued, exceed its obligations, liabilities (including contingent liabilities) and debts.

(e)      <u>Legality</u>.  The execution, delivery and performance by the Guarantor of this Guaranty and the consummation of the transactions contemplated hereunder do not, and will not, contravene or conflict with any law, statute or regulation whatsoever to which the Guarantor is subject or constitute a default (or an event which with notice or lapse of time or both would constitute a default) under, or result in the breach of, any indenture, mortgage, deed of trust, charge, lien, or any contract, agreement or other instrument to which the Guarantor is a party or which may be applicable to the Guarantor.  This Guaranty is a legal and binding obligation of the Guarantor and is enforceable in accordance with its terms, except as limited by bankruptcy, insolvency or other laws of general application relating to the enforcement of creditors' rights.

(f)      <u>Financial Information</u>.  All of the financial information provided by the Guarantor to the Bond Trustee and the Bond Owner Representative is true and correct in all material respects as of the date hereof.

(g)      <u>Survival</u>.  All representations and warranties made by the Guarantor herein shall survive the execution hereof and performance or satisfaction of the Guaranteed Obligations in full.

**8.      Covenants of the Guarantor.** The Guarantor agrees to do the following:

(a)      <u>Liquidity</u>.  Until indefeasible payment in full of the Guaranteed Obligations, and satisfaction of all of the Guarantor's other obligations hereunder, the Guarantor shall at all times maintain

5

a Tangible Net Worth of not less than $5,000,000, and liquid net assets of not less than $1,000,000. The Guarantor covenants and agrees not to deliberately transfer assets or incur liabilities for less than adequate and full consideration if the effect of such transactions would be to reduce Guarantor's net worth below the foregoing tangible net worth requirement. For the purposes of this Section, "Tangible Net Worth" shall mean, as of a given date, (i) Guarantor's total assets, based on market valuations, as of such date (exclusive of any equity attributable to the Project) less, (ii) Guarantor's total liabilities (taking into consideration contingent liabilities, including other contingent liabilities under this Guaranty and other guaranties) as of such date, determined in accordance with GAAP.

(b)   Reporting. On a quarterly basis Bond Owner Representative may request in writing Guarantor's financial statements prepared by an independent certified public accountant, which shall at minimum, evidence the requirements of the foregoing paragraph.

**9.     Obligations Unsecured; Cross-Default.**

The obligations of Guarantor under this Guaranty shall not be secured by any security instrument or the Loan Agreement. However, a default under this Guaranty shall be an Event of Default under the Loan Agreement, and a default under this Guaranty shall entitle Lender, Bond Trustee, or Bond Owner Representative to be able to exercise all of its rights and remedies under the Loan Agreement and the other Loan Documents.

**10.    Continuing Guaranty.**

The obligations of Guarantor under this Guaranty shall be unconditional irrespective of the genuineness, validity, regularity or enforceability of any provision of this Guaranty, or any Loan Document. Guarantor agrees that performance of the obligations hereunder shall be a primary obligation, shall not be subject to any counterclaim, set-off, recoupment, abatement, deferment or defense based upon any claim that Guarantor may have against Lender, Bond Trustee, Bond Owner Representative, Borrower, any other guarantor of the obligations hereunder or any other Person, and shall remain in full force and effect without regard to, and shall not be released, discharged or affected in any way by any circumstance or condition (whether or not Guarantor shall have any knowledge thereof), including:

(a)   any furnishing, exchange, substitution or release of any collateral securing repayment of the Indebtedness, or any failure to perfect any lien in such collateral;

(b)   any failure, omission or delay on the part of Borrower, Guarantor, any other guarantor of the obligations hereunder or Lender, Bond Trustee, or Bond Owner Representative to conform or comply with any term of any of the Loan Documents or failure of Lender, Bond Trustee, or Bond Owner Representative to give notice of any Event of Default;

(c)   any action or inaction by Lender, Bond Trustee, or Bond Owner Representative under or in respect of any of the Loan Documents, any failure, lack of diligence, omission or delay on the part of Lender, Bond Trustee, or Bond Owner Representative to perfect, enforce, assert or exercise any lien, security interest, right, power or remedy conferred upon it in any of the Loan Documents, or any other action or inaction on the part of Lender, Bond Trustee, or Bond Owner Representative;

(d)   any Bankruptcy Event, or any voluntary or involuntary bankruptcy, insolvency, reorganization, arrangement, readjustment, assignment for the benefit of creditors, composition, receivership, liquidation, marshaling of assets and liabilities or similar events or proceedings with respect to Guarantor or any other guarantor of the obligations hereunder, or any of their respective property or creditors or any action taken by any trustee or receiver or by any court in such proceeding;

(e)      any merger or consolidation of Borrower into or with any entity or any sale, lease or Transfer of any asset of Borrower, Guarantor or any other guarantor of the obligations hereunder to any other Person;

(f)      any change in the ownership of Borrower or any change in the relationship between Borrower, Guarantor or any other guarantor of the obligations hereunder, or any termination of such relationship;

(g)      any release or discharge by operation of law of Borrower, Guarantor or any other guarantor of the obligations hereunder, or any obligation or agreement contained in any of the Loan Documents; or

(h)      any other occurrence, circumstance, happening or event, whether similar or dissimilar to the foregoing, and whether seen or unforeseen, which otherwise might constitute a legal or equitable defense or discharge of the liabilities of a guarantor or surety or which otherwise might limit recourse against Borrower or Guarantor to the fullest extent permitted by law.

**11.    Guarantor Waivers.**

Guarantor hereby waives:

(a)      the benefit of all principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms of this Guaranty (and agrees that Guarantor's obligations shall not be affected by any circumstances, whether or not referred to in this Guaranty, which might otherwise constitute a legal or equitable discharge of a surety or a guarantor);

(b)      the benefits of any right of discharge under any and all statutes or other laws relating to guarantors or sureties and any other rights of sureties and guarantors;

(c)      diligence in collecting the Indebtedness, presentment, demand for payment, protest and all notices with respect to the Loan Documents and this Guaranty which may be required by statute, rule of law or otherwise to preserve Lender's, Bond Trustee's, and Bond Owner Representative's rights against Guarantor under this Guaranty, including notice of acceptance, notice of any amendment of the Loan Documents, notice of the occurrence of any Event of Default, notice of intent to accelerate, notice of acceleration, notice of dishonor, notice of foreclosure, notice of protest and notice of the incurring by Borrower of any obligation or indebtedness; and

(d)      all rights to require Lender, Bond Trustee or Bond Owner Representative to:

(1)      proceed against or exhaust any collateral held by Lender or Bond Trustee to secure the repayment of the Indebtedness;

(2)      proceed against or pursue any remedy it may now or hereafter have against Borrower or any guarantor, or, if Borrower or any guarantor is a partnership, any general partner of Borrower or general partner of any guarantor; or

(3)      demand or require collateral security from Borrower, any other guarantor or any other Person as provided by applicable law or otherwise.

**12.     No Effect Upon Obligations.**

At any time or from time to time and any number of times, without notice to Guarantor and without releasing, discharging or affecting the liability of Guarantor:

(a)     the time for payment of the principal of or interest on the Indebtedness may be extended or the Indebtedness may be renewed in whole or in part;

(b)     the rate of interest on or period of amortization of the Indebtedness or the amount of the debt service payments payable under the Loan Documents or the Bond Indenture may be modified if such adjustment is otherwise allowed in Loan Documents;

(c)     the time for Borrower's performance of or compliance with any covenant or agreement contained in any Loan Document, whether presently existing or hereinafter entered into, may be extended or such performance or compliance may be waived;

(d)     the maturity of the Indebtedness may be accelerated as provided in the Loan Documents;

(e)     any or all payments due under the Loan Agreement or any other Loan Document may be reduced;

(f)     any Loan Document may be modified or amended by Lender, Bond Trustee, or Bond Owner Representative and Borrower in any respect, including an increase in the principal amount under the Loan Documents or the Bond Indenture;

(g)     any amounts under the Loan Agreement or any other Loan Document may be released;

(h)     any security for the Indebtedness may be modified, exchanged, released, surrendered or otherwise dealt with or additional security may be pledged or mortgaged for the Indebtedness;

(i)     the payment of the Indebtedness or any security for the Indebtedness, or both, may be subordinated to the right to payment or the security, or both, of any other present or future creditor of Borrower;

(j)     any payments made by Borrower to Lender or the Bond Trustee may be applied to the Indebtedness in such priority as Lender or the Bond Trustee may determine in its discretion; and

(k)     any other terms of the Loan Documents may be modified as required by Lender, Bond Trustee, or Bond Owner Representative.

**13.     Joint and Several Liability.**

If more than one Person executes this Guaranty as Guarantor, such Persons shall be liable for the obligations hereunder on a joint and several basis.  Lender, Bond Trustee or Bond Owner Representative, in its discretion, may:

(a)     to the extent permitted by applicable law, bring suit against Guarantor, or any one or more of the Persons constituting Guarantor, and any other guarantor, jointly and severally, or against any one or more of them;

(b)      compromise or settle with any one or more of the Persons constituting Guarantor, or any other guarantor, for such consideration as Lender, Bond Trustee, or Bond Owner Representative may deem proper;

(c)      discharge or release one or more of the Persons constituting Guarantor, or any other guarantor, from liability or agree not to sue such Person; and

(d)      otherwise deal with Guarantor and any guarantor, or any one or more of them, in any manner, and no such action shall impair the rights of Lender, Bond Trustee, or Bond Owner Representative to collect from Guarantor any amount guaranteed by Guarantor under this Guaranty.

Nothing contained in this Section 133 shall in any way affect or impair the rights or obligations of Guarantor with respect to any other guarantor.

**14.      Subordination of Certain Indebtedness.**

(a)      <u>Subordination of All Guarantor Claims</u>.  As used herein, the term "**Guarantor Claims**" shall mean all debts and liabilities of the Borrower to the Guarantor, whether such debts and liabilities now exist or are hereafter incurred or arise, or whether the obligations of the Borrower thereon be direct, contingent, primary, secondary, several, joint and several, or otherwise, and irrespective of whether such debts or liabilities be evidenced by note, contract, open account, or otherwise, and irrespective of the person or persons in whose favor such debts or liabilities may, at their inception, have been, or may hereafter be created, or the manner in which they have been or may hereafter be acquired by the Guarantor.  The Guarantor Claims shall include without limitation all rights and claims of the Guarantor against the Borrower (arising as a result of subrogation or otherwise) as a result of the Guarantor's performance of all or a portion of the Guaranteed Obligations.  So long as the Series 2022 Bonds are Outstanding, the Guarantor shall not receive or collect, directly or indirectly, from the Borrower or any other party any amount upon the Guarantor Claims, unless such amounts are distributed to the Borrower pursuant to the Bond Indenture.

(b)      <u>Claims in Bankruptcy</u>.  In the event of receivership, bankruptcy, reorganization, arrangement, debtor's relief, or other insolvency proceedings involving the Guarantor as debtor, the Bond Trustee and the Bond Owner Representative shall each have the right to prove its claim in any such proceeding so as to establish its rights hereunder and receive directly from the receiver, trustee or other court custodian dividends and payments which would otherwise be payable upon Guarantor Claims.  The Guarantor hereby assigns such dividends and payments to the Bond Trustee.  Should the Bond Trustee receive, for application upon the Guaranteed Obligations, any such dividend or payment which is otherwise payable to the Guarantor, and which, as between the Borrower and the Guarantor, shall constitute a credit upon Guarantor Claims, then upon payment to the Bond Trustee in full of the Guaranteed Obligations, the Guarantor shall become subrogated to the rights of the Bond Trustee to the extent that such payments to the Bond Trustee on Guarantor Claims have contributed toward the liquidation of the Guaranteed Obligations, and such subrogation shall be with respect to that proportion of the Guaranteed Obligations which would have been unpaid if the Bond Trustee had not received dividends or payments upon Guarantor Claims.

(c)      <u>Payments Held in Trust</u>.  In the event that, notwithstanding anything to the contrary in this Guaranty, the Guarantor should receive any funds, payment, claim or distribution which is prohibited by this Guaranty, the Guarantor agrees to hold in trust for the Bond Trustee an amount equal to the amount of all funds, payments, claims or distributions so received, and agrees that it shall have absolutely no dominion over the amount of such funds, payments, claims or distributions so received except to pay them promptly to the Bond Trustee, and the Guarantor covenants promptly to pay the same to the Bond Trustee.

(d)    Liens Subordinate.  The Guarantor agrees that any liens, security interests, judgment liens, charges or other encumbrances upon the Borrower's assets securing payment of Guarantor Claims shall be and remain inferior and subordinate to any liens, security interests, judgment liens, charges or other encumbrances upon the Borrower's assets securing payment of the Guaranteed Obligations, regardless of whether such encumbrances in favor of the Guarantor or the Bond Trustee presently exist or are hereafter created or attached.  Without the prior written consent of the Bond Trustee, the Guarantor shall not (i) exercise or enforce any creditor's right it may have against the Borrower, or (ii) foreclose, repossess, sequester or otherwise take steps or institute any action or proceedings (judicial or otherwise, including, without limitation, the commencement of, or joinder in, any liquidation, bankruptcy, rearrangement, debtor's relief or insolvency proceeding) to enforce any liens, mortgages, deeds of trust, security interest, collateral rights, judgments or other encumbrances on assets of the Borrower held by the Guarantor.

(e)    No Limitations.  Nothing contained in this Guaranty shall affect or limit the ability of the Bond Trustee or the Bond Owner Representative to enforce any of the Bond Trustee's or the Bond Owner Representative's rights or remedies with respect to any property encumbered by the Bond Indenture or the other Loan Documents.  Nothing contained in this Guaranty shall affect or limit the rights of the Bond Trustee to proceed against any other person or entity, including the Borrower, or any other party with respect to the enforcement of any guarantees of payment, guarantees of performance and completion, hazardous materials indemnifications or agreements or other similar rights.

## 15.    Subrogation.

Guarantor shall have no right of, and hereby waives any claim for, subrogation or reimbursement against Borrower or any general partner of Borrower by reason of any payment by Guarantor under this Guaranty, whether such right or claim arises at law or in equity or under any contract or statute, until the Indebtedness has been paid in full and there has expired the maximum possible period thereafter during which any payment made by Borrower to Lender or Bond Trustee with respect to the Indebtedness could be deemed a preference under applicable insolvency laws.

## 16.    Voidable Transfer.

If any payment by Borrower is held to constitute a preference under any insolvency laws or similar laws, or if for any other reason Bond Trustee or Bond Owner Representative is required to refund any sums to Borrower, such refund shall not constitute a release of any liability of Guarantor under this Guaranty.  It is the intention of Bond Trustee, Bond Owner Representative and Guarantor that Guarantor's obligations under this Guaranty shall not be discharged except by Guarantor's performance of such obligations and then only to the extent of such performance.  If any payment by any Guarantor should for any reason subsequently be declared to be void or voidable under any state or federal law relating to creditors' rights, including provisions of the insolvency laws relating to a voidable transfer, and if Bond Trustee or Bond Owner Representative is required to repay or restore, in whole or in part, any such voidable transfer, or elects to do so upon the advice of its counsel, then the obligations guaranteed hereunder shall automatically be revived, reinstated and restored by the amount of such voidable transfer or the amount of such voidable transfer that Bond Trustee or Bond Owner Representative is required or elects to repay or restore, including all reasonable costs, expenses and legal fees incurred by Bond Trustee or Bond Owner Representative in connection therewith, and shall exist as though such voidable transfer had never been made, and any other guarantor, if any, shall remain liable for such obligations in full.

## 17.    Time is of the Essence.

Guarantor agrees that, with respect to each and every obligation and covenant contained in this Guaranty, time is of the essence.

18.     **No Reliance.**

Guarantor acknowledges, represents and warrants that:

(a)     it understands the nature and structure of the transactions contemplated by this Guaranty and the other Loan Documents;

(b)     it is familiar with the provisions of all of the documents and instruments relating to such transactions;

(c)     it understands the risks inherent in such transactions, including the risk of loss of all or any part of the Mortgaged Property or of the assets of Guarantor;

(d)     it has had the opportunity to consult counsel; and

(e)     it has not relied on Lender, Bond Trustee, or Bond Owner Representative for any guidance or expertise in analyzing the financial or other consequences of the transactions contemplated by this Guaranty or any other Loan Document or otherwise relied on Lender, Bond Trustee, or Bond Owner Representative in any manner in connection with interpreting, entering into or otherwise in connection with this Guaranty, any other Loan Document or any of the matters contemplated hereby or thereby.

19.     **Miscellaneous.**

(a)     <u>Waiver</u>.  No failure to exercise, and no delay in exercising, on the part of the Bond Trustee or Bond Owner Representative, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right. The rights of the Bond Trustee or Bond Owner Representative hereunder shall be in addition to all other rights provided by law.  No modification or waiver of any provision of this Guaranty, nor consent to departure therefrom, shall be effective unless in writing and no such consent or waiver shall extend beyond the particular case and purpose involved.  No notice or demand given in any case shall constitute a waiver of the right to take other action in the same, similar or other instances without such notice or demand.

(b)     <u>Notices</u>.  All notices or other communications required or permitted to be given pursuant hereto shall be in writing and shall be deemed properly given if (i) mailed by first class United States mail, postage prepaid, registered or certified with return receipt requested; (ii) by delivering same in person to the intended addressee; or (iii) by delivery to an independent third party commercial delivery service for same day or next day delivery and providing for evidence of receipt at the office of the intended addressee. Notice so mailed shall be effective upon its deposit with the United States Postal Service or any successor thereto; notice sent by a commercial delivery service shall be effective upon delivery to such commercial delivery service; notice given by personal delivery shall be effective only if and when received by the addressee; and notice given by other means shall be effective only if and when received at the designated address of the intended addressee.  Either party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of thirty (30) days notice to the other party in the manner set forth herein.  For purposes of such notices, the addresses of the parties shall be as follows:

Bond Trustee:     U.S. Bank Trust Company National Association
                  13737 Noel Road, Suite 800
                  Dallas, TX 75240
                  Attn: Global Corporate Trust

| Bond Owner Representative: | PHCC LLC d/b/a Preston Hollow Community Capital |
|---|---|
| | 1717 Main Street, Suite 3900 |
| | Dallas, TX 75201 |
| | Attention: John Dinan, General Counsel |
| | |
| Guarantor: | R. Lee Harris |
| | 8500 Shawnee Mission Pkwy, Suite 150 |
| | Merriam, KS 66202 |
| | |
| | Robert E. Esrey |
| | 8500 Shawnee Mission Pkwy, Suite 150 |
| | Merriam, KS 66202 |

(c)   GOVERNING LAW.   THE CONTRACTUAL AND OTHER GENERAL AGREEMENTS EVIDENCED BY THIS GUARANTY WILL BE GENERALLY GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS; PROVIDED, HOWEVER, TO THE EXTENT THAT ANY OF SUCH LAWS MAY NOW OR HEREAFTER BE PREEMPTED BY FEDERAL LAW, SUCH FEDERAL LAW SHALL SO GOVERN AND BE CONTROLLING.   ANY ACTION OR PROCEEDING AGAINST GUARANTOR UNDER OR IN CONNECTION WITH THIS GUARANTY MAY BE BROUGHT IN ANY STATE OR FEDERAL COURT HAVING JURISDICTION IN BEXAR COUNTY, TEXAS.   GUARANTOR HEREBY IRREVOCABLY (A) SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS, AND (B) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM, AND (C) CONSENTS TO THE SERVICE OF PROCESS IN ANY MANNER AUTHORIZED BY TEXAS LAW.   NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE BOND TRUSTEE OR BOND OWNER REPRESENTATIVE TO BRING ANY ACTION OR PROCEEDING AGAINST GUARANTOR OR WITH RESPECT TO ANY OF GUARANTOR'S PROPERTY IN COMPETENT COURTS IN OTHER JURISDICTIONS.   ANY ACTION OR PROCEEDING BY GUARANTOR AGAINST THE BOND TRUSTEE OR BOND OWNER REPRESENTATIVE SHALL BE BROUGHT ONLY IN A STATE OR FEDERAL COURT HAVING JURISDICTION IN BEXAR COUNTY, TEXAS.   THE BOND TRUSTEE HEREBY IRREVOCABLY (A) SUBMITS TO THE EXCLUSIVE JURISDICTION OF SUCH COURTS, (B) WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM, AND (C) CONSENTS TO THE SERVICE OF PROCESS IN ANY MANNER AUTHORIZED BY TEXAS LAW.

(d)   Invalid Provisions.   If any provision of this Guaranty is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Guaranty, such provision shall be fully severable and this Guaranty shall be construed and enforced as if such illegal, invalid or unenforceable provision had never comprised a part of this Guaranty, and the remaining provisions of this Guaranty shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Guaranty, unless such continued effectiveness of this Guaranty, as modified, would be contrary to the basic understandings and intentions of the parties as expressed herein.

(e)   Amendments.   This Guaranty may be amended only by an instrument in writing executed by the party or an authorized representative of the party against whom such amendment is sought to be enforced.

(f)      Disclosure of Information. The Bond Trustee and the Bond Owner Representative may each furnish information regarding Borrower, Guarantor, the Property, the Project, and related information and Loan Documents to third parties including trustees, master servicers, special servicers, rating agencies, lenders, investors, and organizations maintaining databases on the underwriting and performance of multifamily mortgage loans.  Guarantor irrevocably waives any and all rights it may have under applicable law to prohibit such disclosure, including any right of privacy.

(g)      Parties Bound; Assignment.  This Guaranty shall be binding upon and inure to the benefit of the parties hereto and their respective successors, assigns and legal representatives; provided, however, that the Guarantor may not, without the prior written consent of the Bond Trustee or the Bond Owner Representative, assign any of its rights, powers, duties or obligations hereunder.

(h)      Headings.  Section headings are for convenience of reference only and shall in no way affect the interpretation of this Guaranty.

(i)      Recitals.  The recital and introductory paragraphs hereof are a part hereof, form a basis for this Guaranty and shall be considered *prima facie* evidence of the facts and documents referred to therein.

(j)      Counterparts.   To facilitate execution, this Guaranty may be executed in as many counterparts as may be convenient or required.   It shall not be necessary that the signature or acknowledgment of, or on behalf of, each party, or that the signature of all persons required to bind any party, or the acknowledgment of such party, appear on each counterpart. All counterparts shall collectively constitute a single instrument.  It shall not be necessary in making proof of this Guaranty to produce or account for more than a single counterpart containing the respective signatures of, or on behalf of, and the respective acknowledgments of, each of the parties hereto.  Any signature or acknowledgment page to any counterpart may be detached from such counterpart without impairing the legal effect of the signatures or acknowledgments thereon and thereafter attached to another counterpart identical thereto except having attached to it additional signature or acknowledgment pages.

(k)      Rights and Remedies.  If the Guarantor becomes liable for any indebtedness owing by the Borrower under the Loan Documents, by endorsement or otherwise, other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby and the rights of the Bond Trustee hereunder shall be cumulative of any and all other rights that the Bond Trustee may ever have against the Guarantor. The exercise by the Bond Trustee of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy.

(l)      ENTIRETY.  THIS GUARANTY EMBODIES THE FINAL, ENTIRE AGREEMENT OF THE GUARANTOR, THE BOND TRUSTEE AND THE BOND OWNER REPRESENTATIVE WITH RESPECT TO THE GUARANTOR'S GUARANTY OF THE GUARANTEED OBLIGATIONS AND SUPERSEDES ANY AND ALL PRIOR COMMITMENTS, AGREEMENTS, REPRESENTATIONS, AND UNDERSTANDINGS, WHETHER WRITTEN OR ORAL, RELATING TO THE SUBJECT MATTER HEREOF.  THIS GUARANTY IS INTENDED BY THE GUARANTOR, THE BOND TRUSTEE, AND THE BOND OWNER REPRESENTATIVE AS A FINAL AND COMPLETE EXPRESSION OF THE TERMS OF THE GUARANTY, AND NO COURSE OF DEALING AMONG THE GUARANTOR, THE BOND TRUSTEE, AND THE BOND OWNER REPRESENTATIVE, NO COURSE OF PERFORMANCE, NO TRADE PRACTICES, AND NO EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OR DISCUSSIONS OR OTHER EXTRINSIC EVIDENCE OF ANY NATURE SHALL BE USED TO CONTRADICT, VARY, SUPPLEMENT OR MODIFY ANY TERM OF THIS GUARANTY AGREEMENT.  THERE ARE NO ORAL AGREEMENTS AMONG THE GUARANTOR, THE BOND TRUSTEE, AND THE BOND OWNER REPRESENTATIVE.

(m)     <u>WAIVER OF RIGHT TO TRIAL BY JURY</u>.  THE GUARANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS GUARANTY OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH.  THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY THE GUARANTOR, AND IS INTENDED TO ENCOMPASS DISCRETELY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.  THE BOND TRUSTEE AND THE BOND OWNER REPRESENTATIVE ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY THE GUARANTOR.

(n)     <u>Bond Trustee</u>.  In connection with the Bond Trustee's acceptance of this Guaranty and exercise of its rights hereunder, the Bond Trustee shall be entitled to all of its rights, privileges, benefits, protections and immunities set forth in the Bond Indenture.

(o)     <u>Bond Owner Representative</u>.  In connection with the Bond Owner Representative's acceptance of this Guaranty and exercise of its rights hereunder, the Bond Owner Representative shall be entitled to all of its rights, privileges, benefits, protections and immunities set forth in the Bond Indenture and the other Loan Documents.

## 20.     Texas Provisions.

(a)     In addition, Guarantor waives the benefit of any right of discharge under Chapter 43 of the Texas Civil Practice and Remedies Code and all other rights of sureties and guarantors thereunder.

(b)     Guarantor waives all rights to contest any deficiency asserted by Lender, Bond Trustee, or Bond Owner Representative as set forth in Texas Property Code 51.003, 51.004 and 51.005.

**[Remainder of Page Intentionally Blank]**

**IN WITNESS WHEREOF**, Guarantor has signed and delivered this Guaranty under seal (where applicable) or has caused this Guaranty to be signed and delivered under seal (where applicable) by its duly authorized representative.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

**GUARANTOR:**

_____
R. Lee Harris

Address for Notices to Guarantor:

R. Lee Harris
8500 Shawnee Mission Pkwy, Suite 150
Merriam, KS 66202

[Signatures Continue to Next Page]

[Signature Page – Completion Guaranty – Lofts at Creekview]

**IN WITNESS WHEREOF**, Guarantor has signed and delivered this Guaranty under seal (where applicable) or has caused this Guaranty to be signed and delivered under seal (where applicable) by its duly authorized representative.  Where applicable law so provides, Guarantor intends that this Guaranty shall be deemed to be signed and delivered as a sealed instrument.

**GUARANTOR**:

Robert E. Esrey

Address for Notices to Guarantor:

Robert E. Esrey
8500 Shawnee Mission Pkwy, Suite 150
Merriam, KS 66202

[Signature Page – Completion Guaranty – Lofts at Creekview]

# EXHIBIT B



March 27, 2024

**Via Email and Federal Express**

Mr. Robert E. Esrey
8500 Shawnee Mission Pkwy, Suite 150
Merriam, KS 66202

Mr. R. Lee Harris
8500 Shawnee Mission Pkwy, Suite 150
Merriam, KS 66202

   Re:  **Supplemental Demand for Performance of Completion Guaranty Obligations**

     **Project:**  East Commerce Project, San Antonio, Texas (the "**Project**")
     **Developer:**  Cohen-Esrey Development Group, LLC ("**Developer**")
     **Contractor:**  Galaxy Builders, Ltd. ("**Contractor**")

     Completion Guaranty dated March 30, 2022 ("**Completion Guaranty**") for the benefit of (i) U.S. Bank Trust Company, National Association as trustee ("**Bond Trustee**") and (ii) PHCC LLC d/b/a Preston Hollow Community Capital LLC, in its capacity as Bond Owner Representative ("**PHCC**")

Gentlemen:

   Reference is made to your continuing obligations and liabilities pursuant to that certain Completion Guaranty identified above, as well as the Development Agreement, Galaxy Construction Contract, Construction Disbursement and Monitoring Agreement and all other financing, guaranty and security documents (collectively, the "**Project Financing Documents**") entered into with respect to the acquisition, development, and construction of the Project. Reference is also made to (i) PHCC's September 27, 2022 and January 14, 2023 demand letters to you in connection with the initial Loan Rebalancing Payment of $2,000,000 (the "**First Payment**"), (ii) PHCC's May 5, 2023 demand letter to you in connection with the second Loan Rebalancing Payment of $1,000,000 (the "**Second Payment**"), PHCC's August 15, 2023 demand letter to you in connection with the third Loan Rebalancing Payment of $2,000,000 (the "**Third Payment**") and PHCC's December 11, 2023 demand letter to you in connection with the fourth Loan Rebalancing Payment of $2,000,000 (the "**Fourth Payment**").

Pursuant to various written communications (including Owner change orders and GC completion timeline) recently received by PHCC from the Developer, the Contractor, and their respective representatives and consultants, PHCC has been notified of the following matters:

(1) The Contractor's construction completion schedule dated February 23, 2024 reflects an additional extension of the original Project Substantial Completion Date until November 5, 2025 (resulting in an aggregate 645-day delay beyond the January 30, 2024 original Project Substantial Completion Date) which equates to a total cost of carry delay of $6,262,524;

(2) Pursuant to the Contractor's Owner's Report dated February 28, 2024:  (a) Approved Change Orders to date total $3,613,696.95 (inclusive of Change Order #2, Change Order #8, Change Order # 10, Change Order # 24, Change Order #31 and Change order #33 for additional Delay General Conditions Costs totaling $1,323,427.12, associated generally with environmental remediation delays, building pad delays and Utility delays), and (b) Pending Change Orders, associated mostly with near-term construction cost overruns for fire sprinkler systems totaling $200,353. Approved and Pending Owner Change Orders to date total $3,814,049.95 which exceeds the remaining Hard Cost Contingency ($1,763,661.00) by $2,050,388.95.

(3) Additionally, outside of the Contractor's construction contract, the Developer's environmental Change Orders (primarily from work performed by Tetra Tech) total an additional $1,013,685.17.

Based on the information cited above, the costs of the Guaranteed Work, as defined in the Completion Agreement, have increased by $9,326,598.42 when giving effect to all Change Orders and assuming, hypothetically, that PHCC authorized the application of the entire remaining Hard Cost Contingency to such cost overruns. A summary of the increased costs is set forth in the schedule attached to this letter.

Accordingly, pursuant to Section 3(a)(5)(i) and (ii) of the Completion Guaranty and after taking into account a credit of $7,000,000 for the First Payment, Second Payment, Third Payment and Fourth Payment, demand is hereby made upon you, as joint and severable Guarantors, to deposit a fifth Loan Rebalancing Payment (or acceptable letter of credit) of $2,000,000 with the Bond Trustee within ten (10) days of the date of this demand letter. Be advised that (i) the Project Financing Documents do not permit the required Loan Rebalancing Payment necessary to cover the projected increased carrying costs of the Indebtedness and the increased costs of general conditions payable to the Contractor to be offset by the Hard Cost Contingency amount set forth in the Project Budget, and (ii) Bond Owner Representative has not yet made a determination as to the amount of the Hard Cost Contingency, if any, which may be applied to total allowed Change Orders given that the Project construction is only about 19% complete.

Bond Owner Representative reserves (i) the right to make additional demands for Loan Rebalancing Payments and other payments and performance under the Completion Guaranty and (ii) all rights, privileges, benefits, protections, immunities, remedies, and defenses it has or may have under the Completion Guaranty and the other documents relating to the Indebtedness (as defined in the Completion Guaranty) and applicable law and this letter should not be construed as a waiver of any rights, remedies and defenses.

This letter (i) does not constitute an agreement by the Bond Owner Representative to enter into any amendment, waiver, or other modification of the Completion Guaranty, the Construction Contract (as defined in the Completion Guaranty) or other documents relating to the Indebtedness, (ii) does not waive any default or event of default under the Completion Guaranty or other documents relating to the Indebtedness, (iii) does not establish a course of dealing or agreement with respect to any proposed use of the remaining Hard Cost Contingency, and (iv) does not waive, limit, condition, or prejudice any of the Bond Owner Representative's rights or remedies under the Construction Contract, the Completion Guaranty, or other documents relating to the Indebtedness or applicable law, all of which rights and remedies are expressly reserved.

Should you have any questions or wish to discuss this demand, please contact the undersigned.

Sincerely,

John Dinan
General Counsel & Secretary

cc:    Cohen-Esrey Development Group, LLC, Attention: Jon Atlas
       SAHT Creekview Lofts, LLC, Attention: Pete Alanis
       Bracewell LLP, Attention: James P. Plummer
       Sandberg Phoenix & von Gontard PC, Attention: James C. Neeld
       US Bank Trust Company National Association
       Winstead Law Firm, Attention: Michelle Rieger

**Rebalancing Calculation:**

| | | |
|---|---|---|
| Expected Completion Date[1] | | 11/5/2025 |
| Delay Cost of Carry (645 Day Delay)[2] | | $6,262,524 |
| Change Order Overage vs. Contingency[3] | | $2,050,388.95 |
| Developer Environmental Change Orders[4] | | $1,013,685.17 |
| | Total: | $9,326,589.42 |
| Less Previous Rebalancing Pmts[5] | | ($7,000,000) |
| Current Out of Balance: | | $2,326,598.42 |

1 The original General Contractor's construction period is 22 months ending 1/30/2024. Galaxy's most recent revised completion date is 11/5/2025 or 645-day delay per the 2/29/24 completion schedule.
2 Cost of carry is $9,709.34 per day. Completion Guarantee date is 1/30/24. Delay from 1/30/24 to 9/10/25 equates to 645 days.
3 Total Change Orders equal $3,814,049.95.  Total Hard Cost Contingency is $1,763,661.00.  Overage amount is $2,050,388.95.
4 Developer Environmental Change Orders outside of the GC Contract.
5 Rebalancing payments previously provided by CE.

# EXHIBIT C

# LYNN PINKER HURST SCHWEGMANN

ERIC PINKER
*Partner*
*Board Certified – Civil Trial Advocate*
*National Board of Trial Advocacy*

Lynn Pinker Hurst & Schwegmann, LLP
2100 Ross Avenue
Suite 2700
Dallas, Texas 75201
**lynnllp.com**

D 214 981 3837
F 214 981 3839
epinker@lynnllp.com

May 1, 2024

**Via Email: besrey@cohenesrey.com**          **Via Email: lharris@cohenesrey.com**
**Via CMRRR 702-1290-0000-3623-5606**          **Via CMRRR: 7020-1290-0000-3623-5590**

Mr. Robert E. Esrey                                     Mr. R. Lee Harris
8500 Shawnee Mission Pkwy, Suite 150          8500 Shawnee Mission Pkwy, Suite 150
Merriam, KS 66202                                      Merriam, KS 66202

Re:     Notice of Default by R. Lee Harris, and Robert E. Esrey regarding East Commerce
Project, San Antonio, Texas

Mr. Esrey and Mr. Harris:

PHCC, LLC d/b/a Preston Hollow Community Capital ("**Bond Owner Representative**" or "**PHCC**") has retained my firm regarding your default and breach of the Completion Guaranty Agreement effective March 30, 2022, and executed by Robert E. Esrey and R. Lee Harris (collectively, "**Guarantors**").

Reference is made to your continuing obligations and liabilities pursuant to that certain Completion Guaranty identified above, as well as the Development Agreement, Galaxy Construction Contract, Construction Disbursement and Monitoring Agreement and all other financing, guaranty and security documents (collectively, the "**Project Financing Documents**") entered into with respect to the acquisition, development, and construction of the Project. Reference is also made to (i) PHCC's September 27, 2022 and January 14, 2023 demand letters to you in connection with the initial Loan Rebalancing Payment of $2,000,000 (the "**First Payment**"), (ii) PHCC's May 5, 2023 demand letter to you in connection with the second Loan Rebalancing Payment of $1,000,000 (the "**Second Payment**"), (iii) PHCC's August 15, 2023 demand letter to you in connection with the third Loan Rebalancing Payment of $2,000,000 (the "**Third Payment**"), (iv) PHCC's December 11, 2023 demand letter to you in connection with the fourth Loan Rebalancing Payment of $2,000,000 (the "**Fourth Payment**"), and (v) PHCC's March 27, 2024 Demand letter to you in connection with the fourth Loan Rebalancing Payment of $2,000,000 (the "**Fifth Demand**"). The above referenced items are explicitly incorporated into this correspondence.

Cohen-Esrey Development Group, LLC ("**Developer**") serves as developer of the East Commerce Project, San Antonio, Texas (the "**Project**"). As part of its responsibilities, Developer executed the Development Agreement, Galaxy Construction Contract, Construction Disbursement and Monitoring Agreement and other financing, guaranty and security documents (collectively "**Project Documents**"). In support of those documents, and as an express condition to PHCC's participation in the project, Mr. Esrey and Mr. Harris

May 1, 2024
Page 2 of 6

additionally executed the Completion Guaranty Agreement obligating their financial responsibility in the event of defaults under the Project Documents or Cohen-Esrey's inability to satisfy its obligations under the Project Documents.

The Contractor's construction completion schedule dated February 23, 2024, now reflects an aggregate extension of the 645-day delay beyond the January 30, 2024 original Project Substantial Completion Date. Guarantors are fully aware of their continuing duties and liabilities pursuant to the Completion Guaranty and the other Project Documents, and PHCC demands that their strict performance under the terms of those agreements. Nothing in this letter should be construed or interpreted as relieving Guarantors or Cohen-Esrey of their continuing obligations and liabilities under the Project Documents.

As a direct result of the increased delays and costs associated therewith, on March 27, 2024, PHCC demanded an additional $2,000,000.00 Loan Rebalancing Payment under the Completion Guaranty. In subsequent correspondence between your attorney and PHCC, PHCC agreed to extend compliance with the Fifth Demand to 5:00 pm Central Time on April 30, 2024. Despite that agreement, Guarantors have refused or failed to satisfy the Fifth Demand for Loan Rebalancing Payment required under Section 3(a)(5) of the Completion Guaranty. The obligations of Guarantors under the Completion Guaranty are "unconditional" and "shall not be subject to any counterclaim, set-off, recoupment, abatement, deferment or defense." ***Accordingly, this letter provides Notice that Guarantors have defaulted on the Completion Guaranty***.

In addition, please take notice that Guarantors' refusal to satisfy the Fifth Demand from PHCC constitutes a ***cross-default of Project Documents***. Section 9 of Completion Agreement provides that "a default under this Guaranty shall be an Event of Default under the Loan Agreement, and a default under this Guaranty shall entitle Lender, Bond Trustee, or ***Bond Owner Representative to be able to exercise all of its rights and remedies under the Loan Agreement and the other Loan Documents***." PHCC expressly reserves its right to enforce the Completion Guaranty and elect any remedies and/or claims to which it is entitled under that document or any of the other Project Documents.

Be advised that (i) the Project Financing Documents do not permit the required Loan Rebalancing Payment necessary to cover the projected increased carrying costs of the Indebtedness and the increased costs of general conditions payable to the Contractor to be offset by the Hard Cost Contingency amount set forth in the Project Budget, and (ii) Bond Owner Representative has not yet made a determination as to the amount of the Hard Cost Contingency, if any, which may be applied to total allowed Change Orders given that the Project construction is only about 19% complete. Bond Owner Representative reserves (i) the right to make additional demands for Loan Rebalancing Payments and other payments and performance under the Completion Guaranty and (ii) all rights, privileges, benefits, protections, immunities, remedies, and defenses it has or may have under the Completion Guaranty and the other documents relating to the Indebtedness (as defined in the Completion Guaranty) and applicable law and this letter should not be construed as a waiver of any rights, remedies and defenses.

May 1, 2024
Page 3 of 6

Nothing in this letter shall be construed as a waiver or release by PHCC of any right, remedy, or cause of action with respect to Guarantors or Cohen-Esrey. PHCC reserves all rights and remedies available and at law or in equity to ensure Guarantors and Cohen-Esrey's entire and full performance.

## DEMAND

PHCC reiterates its demand the *immediate payment of $2,000,000 Loan Rebalancing Payment* in accordance with the Guarantors obligations and liabilities under the Completion Guaranty. In addition, PHCC demands the payment of $10,000.00 to recover the attorneys' fees and costs incurred with the pursuit of this matter with Guarantors. The attorneys' fee amount will continue to increase if Guarantors do not promptly comply with this demand, and PHCC will pursue all fees and costs incurred in any subsequent litigation pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et seq.* PHCC expressly reserves the right to seek and recover all of their fees and costs under the agreements and any other enabling law or statute.

## LITIGATION HOLD

Notice hereby being served, PHCC directs that Guarantors immediately initiate a litigation hold for potentially relevant evidence comprised of (without limitation), documents, communications, tangible things, and as more fully defined below, electronically stored information (hereinafter "ESI") relating to the Project, as well as all related agreements, parties, and events or occurrences. This litigation hold demand extends to Cohen-Esrey, the Firm for which Guarantors are officers and/or principals.

Guarantors must act diligently and in good faith to secure compliance with such litigation hold and thereby preserve the aforementioned documents, tangible things, and ESI (hereinafter, the "Evidence").

Guarantors should anticipate that much of the information subject to disclosure or responsive to discovery in this matter is likely stored on current and former computer systems and other media and devices (including but not limited to personal digital assistants, voice-messaging systems, online repositories, e-mail servers, computer servers, and cellular telephones/smart phones) that belong to you or are in your possession, custody, or control. For the avoidance of doubt, this includes any documents, communications, and information exchanged with your attorneys or otherwise subject to the attorney-client, work product, or other applicable claims of privilege as such information may be the subject of a privilege log or related motion practice.

"ESI" should be afforded the broadest possible definition and includes (by way of example, only, and not as an exclusive list) potentially relevant information electronically, magnetically, or optically stored (whether in final or draft form) as:

- Digital communications (e.g., e-mail, voice mail, text messages, instant messaging, messaging apps);
- Word-processed documents (e.g., Google Docs and Word documents);

May 1, 2024
Page 4 of 6

- Email, Calendar and Diary Application Data (e.g., Outlook, Yahoo, blog tools);
- Spreadsheets and tables (e.g., Excel or Google Sheets);
- Social media communications (e.g., Facebook, Snapchat, Instagram, LinkedIn)
- Image and Facsimile Files (e.g., .pdf, .tiff, .jpg, .gif images);
- Sound Recordings (e.g., .wav and .mp3 files);
- Video and Animation (e.g., .avi, .mpg, .mpeg, .mp4, .flv, .mov files);
- Databases (e.g., Access, Oracle, SQL Server data, SAP);
- Contact and Relationship Management Data (e.g., Outlook, ACT!);
- Online Access Data (e.g., Temporary Internet Files, History, Cookies);
- Presentations (e.g., PowerPoint, Corel Presentations);
- Network Access and Server Activity Logs;
- Project Management Application Data;
- Computer Aided Design/Drawing Files; and
- Back Up and Archival Files (e.g., Zip, .GHO).

## SUSPENSION OF ROUTINE DESTRUCTION

Guarantors are further directed to immediately identify and modify or suspend features of your information systems and devices that, in routine operation, operate to cause the loss of potentially relevant ESI. Examples of such features and operations include:

- Purging the contents of e-mail repositories by age, capacity, or other criteria;
- Using data or media wiping, disposal, erasure, or encryption utilities or devices;
- Overwriting, erasing, destroying, or discarding back up media;
- Re-assigning, re-imaging, or disposing of systems, servers, devices, or media;
- Running antivirus or other programs effecting wholesale metadata alteration;
- Releasing or purging online storage repositories;
- Using metadata stripper utilities;
- Disabling server or IM logging; and
- Executing drive or file defragmentation or compression programs.

Adequate preservation of potentially relevant evidence requires more than simply refraining from efforts to destroy or dispose of such evidence. You must also intervene to prevent loss due to routine operations and employ proper techniques and protocols suited to protection of the Evidence. *Be advised that sources of ESI are altered and erased by continued use of your computers and other devices.* Booting a drive, examining its contents, or running any application will irretrievably alter the information it contains and may constitute unlawful spoliation of the Evidence.

## GUARD AGAINST DELETION

Guarantors should take affirmative steps to prevent anyone with access to your data, systems, and archives from seeking to modify, destroy, or hide ESI on network or local hard drives (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging or replacing drives, encryption, compression,

May 1, 2024
Page 5 of 6

steganography, or the like). One way to protect existing data on local hard drives is by the creation and authentication of a forensically qualified image of all sectors of the drive. Such a forensically qualified duplicate may also be called a bit stream image or clone of the drive. Be advised that a conventional back up of a hard drive is not a forensically qualified image because it only captures active, unlocked data files and fails to preserve forensically significant data that may exist in such areas as unallocated space, slack space and the swap file.

## PRESERVATION IN NATIVE FORM

Guarantors should anticipate that certain Evidence, including but not limited to spreadsheets and databases, may be sought in the form or forms in which it is ordinarily maintained. Accordingly, you should preserve such Evidence in such native forms, and you should not select methods to preserve the Evidence that remove or degrade the ability to search it by electronic means or make it difficult or burdensome to access or use the information efficiently in a lawsuit. You should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make it not reasonably accessible and/or illegible.

## METADATA

Guarantors should further anticipate that the need to disclose and produce system and application metadata will arise, and you should immediately act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file and often includes data reflecting a file's name, size, custodian, location, and dates of creation and last modification or access. Application metadata is information automatically included or embedded in electronic files but which may not be apparent to a user, including: deleted content, draft language, commentary, collaboration and distribution data, and dates of creation and printing. All electronically stored documents will contain metadata. You should preserve all metadata associated with any Evidence or other preserved information.

## SERVERS

With respect to servers like those used to manage electronic mail (e.g., Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved.

## PAPER PRESERVATION OF ESI IS INADEQUATE

As hard copies do not preserve electronic searchability or metadata, they are not an adequate substitute for, or cumulative of, electronically stored versions. If information exists in both electronic and paper forms, you must preserve both forms.

May 1, 2024
Page 6 of 6

## AGENTS, ATTORNEYS AND THIRD PARTIES

Guarantors' preservation obligation extends beyond Evidence in your care, possession, or custody and includes Evidence in the custody of others that is subject to your direction or control. Accordingly, you must notify any current or former agent, attorney, employee, e mployer, custodian, or contractor in possession of Evidence and instruct same to preserve such Evidence to the full extent of their obligation to do so, and you must take reasonable steps to secure their compliance.

## FAILURE TO COMPLY – SANCTIONS

Failure to preserve potentially relevant evidence resulting in the corruption, loss, or delay in production of evidence to which we are entitled would constitute spoliation of evidence and could subject you to severe court-imposed sanctions.

This preservation demand is continuing in nature and requires Your preservation of potentially relevant documents and materials that come into Your possession, custody, or control after the date of this Hold Notice. Please acknowledge receipt of this Hold Notice and promptly confirm that You will comply with this preservation demand. Please have your legal counsel contact me at the first opportunity so that we may discuss this matter.

_____   _____
Eric W. Pinker, P.C.


CC:   James Neeld
      Sandberg Phoenix
      4600 Madison Avenue
      Kansas City, MO 64112